IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

NEW YORK CITY TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 04 CV 4237 (SLT) (MDG)

## SETTLEMENT AGREEMENT

Whereas, this action was brought by the United States of America ("United States") against the New York City Transit Authority ("TA"), alleging that the TA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") by engaging in a pattern or practice of discrimination of: (1) selectively enforcing its uniform policies to target Muslim, Sikh and similarly-situated employees whose sincerely held religious beliefs require that they wear religious head coverings; and (2) failing or refusing to reasonably accommodate the sincerely held religious beliefs and practices of those employees wearing religious head coverings. Compl. ¶¶ 8-9, 15-16. The TA denies the allegations in the United States' Complaint.

Whereas, the United States and the TA (collectively, the "Parties") desire that this action be settled by an appropriate settlement agreement and without the burden of continued, protracted litigation, with its attendant costs, the Parties hereby agree to the jurisdiction of this Court over them and the subject matter of this action. For purposes of this Settlement Agreement ("Agreement"), and subject to approval and entry by the Court, the Parties waive a

1

hearing and findings of fact and conclusions of law on all issues, and further agree to the entry of

this Agreement as final and binding between themselves as to the issues raised in the United

States' Complaint filed in this case and the matters resolved in this Agreement.

Whereas, this Agreement, being entered with the consent of the Parties, shall not

constitute an admission, adjudication or finding on the merits of the allegations made in the

Complaint, it also shall not prejudice either party or be admissible by either party in any future

proceeding.  The entry of this Agreement shall not preclude the litigation of any facts or issues in

any litigation between the TA and the individuals listed in paragraphs 11 - 20 herein, whose

claims were consolidated with that of the United States for purposes of discovery only.

Whereas, the TA, by and through its officials, agents, supervisors and employees, jointly

and severally, has committed that it will not engage in any act or practice that has the purpose or

effect of unlawfully discriminating against any employee or prospective employee of the TA

because of his or her religious observance, practice and/or belief in violation of Title VII; and the

TA, by and through its officials, agents, supervisors and employees, jointly and severally, also

has committed that it will not:  (1) selectively enforce uniform policies or take adverse

employment actions against Muslim, Sikh or similarly-situated employees who are unable to

comply with uniform policies for religious reasons; (2) fail or refuse to reasonably accommodate

Muslim, Sikh or similarly-situated employees who, in accordance with their religious beliefs and

practices, are unable to comply with uniform policies; and (3) fail or refuse to take appropriate

action to eliminate policies and practices that discriminate on the basis of religion.

Whereas, the TA also has committed that it will not retaliate against or engage in any act

that adversely affects any employee or prospective employee of the TA because that person has

complained that the TA:  (1) selectively enforced uniform policies or took adverse employment

actions against Muslim, Sikh or similarly-situated employees who are unable to comply with uniform policies for religious reasons; (2) failed or refused to reasonably accommodate Muslim, Sikh or similarly-situated employees who, in accordance with their religious beliefs and practices, are unable to comply with uniform policies; and/or (3) failed or refused to take appropriate action to eliminate policies and practices that discriminate on the basis of religion.

As used in this Agreement, the term "date of entry of this Agreement" is defined as the date on which the Court grants final approval to and enters on the docket this Agreement as a final order of the Court.

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

I.    **PARTIES**

1.    The Parties to this Agreement are the United States and the New York City Transit Authority.

2.    The New York City Transit Authority and its current, former and future agents, employees, officials, designees and successors in interest are hereinafter referred to collectively as the "TA."

II.   **THE TA'S POLICIES AND PROCEDURES**

A.    **Uniform Policies**

3.    As part of the settlement of this case, the TA shall adopt and maintain new uniform policies on headwear for employees, as outlined in Attachment A, hereto.  The new uniform policies give employees additional headwear options, and do not require employees who wear specified headwear, including turbans, headscarves, khimars, tams, skullcaps, kufis or yarmulkes, to attach anything to or to wear anything on top of that headwear.

3

4.      Within thirty (30) calendar days of the date of entry of this Agreement, the TA shall:

a.      Post the new uniform policies on the TA's physical and web-based bulletin boards and in all places where other non-discrimination notices are posted; and

b.      Distribute the new uniform policies to all attendees of any TA orientation or training program for new employees in the titles of bus operator, train operator, station agent and station customer assistant ("SCA").

**B.      Religious Accommodation Policy and Procedure**

5.      As part of the settlement of this case, the TA shall adopt and maintain a new written policy and procedure on religious accommodation ("religious accommodation policy"), as outlined in Attachment B, hereto.  The inclusion or non-inclusion of any particular job title specified in Attachment A shall have no effect on the decision reached by the TA on a request for a religious accommodation under the religious accommodation policy outlined in Attachment B.  The new religious accommodation policy will be separate from and will not replace the TA's Sabbath observance policy.

6.      Within thirty (30) calendar days from the date of entry of this Agreement, the TA shall:

a.      Post the religious accommodation policy on the TA's physical and web-based bulletin boards and in all places where other non-discrimination notices are posted;

4

b.      Distribute the religious accommodation policy to all attendees of

any TA orientation or training program for new employees; and

c.      Distribute the religious accommodation policy and the related

written guidance (Attachment C) via electronic means or in paper form to all

supervisors and managers who possess supervisory authority over bus operators,

train operators, station agents and SCAs and all agency personnel with

responsibility for hiring and initial employment processing.

7.      Within thirty (30) calendar days of the posting and distribution of the

religious accommodation policy described in paragraph 5, *supra*, the TA shall provide the

United States with written verification that the posting and distribution has been

completed in the matter prescribed in paragraph 6, *supra*.

## III.   TRAINING AND GUIDANCE

8.      As part of the settlement of this case, the TA shall require mandatory

training regarding religious discrimination and accommodation for certain individuals as

listed in this paragraph.  The training will be two hours in duration, will take place live

and will be in a lecture format.  The TA will videotape the training.  The Parties will

discuss the content of the training and agree on such content no more than thirty (30)

calendar days after the date of entry of this Agreement.  If the Parties cannot agree on the

content, the Parties may utilize the dispute resolution mechanism described in Section VI,

below.  The training will be provided by the U.S. Equal Employment Opportunity

Commission ("EEOC") within sixty (60) calendar days of the date of entry of this

Agreement to those individuals holding the positions of Senior Director of Collective

Bargaining, Office of Labor Relations and Chief Officer, Office of Equal Employment

Opportunity as of the date of entry of this Agreement. The same training also will be required for any individual who holds either of those two positions during the life of this Agreement; such individuals will be required to undergo the training no more than thirty (30) days after entering on duty by viewing the videotape of the EEOC-provided training described above.

9.      The TA also will provide guidance regarding the religious accommodation policy at management meetings, in small groups, or in one-on-one discussions (collectively, "guidance meetings") held with managers who possess supervisory authority over bus operators, train operators, station agents and SCAs and agency personnel responsible for hiring and initial employment processing. The person providing the guidance will be a member of senior TA management, Office of Labor Relations personnel, or both ("the speaker"). If the guidance will be provided during a planned management meeting, the religious accommodation policy will be an agenda item. During the guidance meetings, the speaker will discuss the religious accommodation policy, and will specifically use the written guidelines in Attachment C to highlight, at a minimum, the following discussion points:

        a.      The role and importance of the requesting employee's manager in the accommodation process, including the importance of forwarding requests to the Office of Labor Relations on a timely basis; and

        b.      The process in which the requesting employee's manager, the requesting employee and the Senior Director of Collective Bargaining may meet and the importance of exchanging information in an effort to address accommodation requests or options.

6

All TA managers and agency personnel responsible for hiring and initial employment processing will receive the guidance described above during a guidance meeting occurring no more than one hundred twenty (120) calendar days from the date of entry of this Agreement.

Attachment C also will be included in all TA supervisor or management training handbooks or training documents involving personnel matters distributed after the date of entry of this Agreement.

10.     One hundred fifty (150) calendar days from the date of entry of this Agreement, senior TA officials from (a) the Department of Buses; (b) the Rapid Transit Operations Division of the Department of Subways; and (c) the Stations Operations Division of the Department of Subways, will each provide the Chair of the TA's Law Department with written confirmation that a good faith effort was made to have the guidance meetings as required by paragraph 9 with all the managers in those applicable Departments and/or Divisions.  Similarly, within one hundred fifty (150) calendar days from the date of entry of this Agreement, a senior TA official from the Office of Labor Relations will provide the General Counsel of the TA with written confirmation that a good faith effort was made to have the guidance meetings as required by paragraph 9 with all agency personnel responsible for hiring and initial employment processing.  The TA must maintain copies of these written confirmations throughout the duration of the Agreement.

One hundred fifty (150) calendar days from the date of entry of this Agreement, the TA will provide the United States with written confirmation that the training was carried out as required by paragraph 8 and that the guidance meetings occurred as

7

required by paragraph 9. The written confirmation of the guidance will include a certification that the TA made a good faith effort to have the guidance meetings with approximately 420 managers from the Department of Buses, the Rapid Transit Operations Division of the Department of Subways, and the Stations Operations Division of the Department of Subways, as well as with agency personnel responsible for hiring and initial employment processing.

## IV.    RELIEF FOR INDIVIDUAL PLAINTIFFS & SIMILARLY-SITUATED INDIVIDUALS

### A.    Identified Individual Plaintiffs

11.    Malikah Alkebulan:  As set forth in a separate agreement under Case No. 03-cv-2139 (E.D.N.Y.), the TA has agreed to pay Ms. Alkebulan $46,000 in monetary relief to resolve claims she raised in her separate lawsuit, which included claims under Title VII.

12.    Satinder Arora:  As set forth in a separate agreement under Case No. 05-cv-5477 (E.D.N.Y.), the TA has agreed to pay Mr. Arora $12,750 in monetary relief to resolve claims he raised in his separate lawsuit, which included claims under Title VII.

13.    Trilok Arora:  As set forth in a separate agreement under Case No. 05-cv-5477 (E.D.N.Y.), the TA has agreed to pay Mr. Arora $12,750 in monetary relief to resolve claims he raised in his separate lawsuit, which included claims under Title VII.

14.    Jatinder Attari:  As set forth in a separate agreement under Case No. 05-cv-5477 (E.D.N.Y.), the TA has agreed to pay Mr. Attari $12,750 in monetary relief to resolve claims he raised in his separate lawsuit, which included claims under Title VII.

15.    Brijinder Gill:  As set forth in a separate agreement under Case No. 05-cv-5477 (E.D.N.Y.), the TA has agreed to pay Mr. Gill $12,750 in monetary relief to resolve claims he raised in his separate lawsuit, which included claims under Title VII.

16.    Kevin Harrington:  As set forth in a separate agreement under Case No. 05-cv-3341 (E.D.N.Y.), the TA has agreed to pay Mr. Harrington $22,500 in monetary relief to resolve claims he raised in his separate lawsuit, which included claims under Title VII.

17.    Gladys Wilson Muhammad:  The TA will provide Ms. Muhammad such monetary relief with respect to her claims, including claims under Title VII, raised under Case No. 04-cv-2294 as is called for by a judgment or settlement or other final disposition in that case.

18.    Deirdre Small:  As set forth in a separate agreement under Case No. 03-cv-2139 (E.D.N.Y.), the TA has agreed to pay Ms. Small $51,000 in monetary relief to resolve claims she raised in her separate lawsuit, which included claims under Title VII.

19.    Inderjit Singh:  As set forth in a separate agreement under Case No. 05-cv-5477 (E.D.N.Y.), the TA has agreed to pay Mr. Singh $14,000 in monetary relief to resolve claims he raised in his separate lawsuit, which included claims under Title VII.

20.    Stephanie Lewis or her estate:  The TA will provide Ms. Lewis or her estate such monetary relief with respect to her claims, including claims under Title VII, raised under Case No. 04-cv-2231 as is called for by a judgment or settlement or other final disposition in that case.

**B.    Similarly-Situated Individuals**

21.    The TA has represented that, other than those individuals identified in paragraphs 11 - 20, no other current or prospective employees in the titles of bus operator, train operator, station agent and SCA requested and were denied religious accommodations with respect to the headwear portions of its uniform policies within the nine (9) years preceding the entry of this Agreement.  If the Parties learn during the duration of this Agreement that any other prospective or current employee of the TA requested and was denied a religious accommodation to the headwear portions of the uniform policies for bus operators, train operators, station agents, SCAs and similarly-situated individuals, during the nine (9) years preceding the entry of this Agreement, the Parties shall fashion appropriate relief.  If the Parties are unable to agree upon such relief, the Parties shall utilize the dispute resolution procedures outlined in Section VI of this Agreement.

**C.    Record Expungement**

22.    For those individuals listed in paragraphs 11 - 19, above, the TA shall remove from each such individual's personnel files, in any form, all items relating to any alleged non-compliance with TA uniform policies regarding headwear during their employment with the TA.  The TA will make the aforementioned expungements no later than sixty (60) calendar days following the date of entry of this Agreement.  With the exception of Gladys Wilson Muhammad, should any of the individuals listed in paragraphs 11 - 19, above, seek re-employment, transfer, or promotion with the TA in the future, the TA agrees that such applications will be given fair, objective and non-discriminatory consideration.

10

### D.   Reinstatement of Passenger Service

23.     Deidre Small and Malikah Alkebulan will be allowed to participate in the next "pick" process and, if they "pick" jobs in passenger service, will be allowed to perform those jobs once the "pick" goes into effect.·

### E.·   Anti-Retaliation

24.     The TA will not retaliate, within the meaning of Title VII, against any individual (i) for having opposed any alleged TA policies or practices claimed by the United States in this action to have violated Title VII, or (ii) for having participated in, or cooperated with the United States in the initiation, investigation, or litigation of this action or in the administration of this Agreement.

## V.   RECORD RETENTION AND REPORTING

25.     For the duration of this Agreement, the TA will retain the following records received or created by the TA:  any papers, electronic files or writings of any kind, including but not limited to reports, records, studies, memoranda, letters, notes, charts, tables, rosters, manuals, guidelines, rules, lists, tabulations, press releases, books, articles, treatises, recordings or transcriptions of minutes, electronic files, machine readable format files, computer files, or audio or video recordings, electronic mail and facsimiles, that come into its possession relating to complaints or charges of employment discrimination based on religion, including failure to accommodate (other than Sabbath observances), against the TA or its employees, agents or representatives:  (a) through the TA's Office of Equal Employment Opportunity (to the extent not confidential); (b) with the U.S. Equal Employment Opportunity Commission; or (c) through or with any other federal or state agency authorized to receive such complaints.  The TA will provide

11

copies of such complaints or charges to the United States within ten (10) business days of its receipt of such charges or complaints. The United States will have the right to inspect and copy all documents related to such complaints or charges upon ten (10) business days' notice to the TA.

26.     For the duration of this Agreement, the TA will retain all records (as defined in paragraph 25) relating to requests for religious accommodation (other than Sabbath observance). The United States will have the right to inspect and copy all documents related to such requests upon reasonable notice to the TA.

27.     For the duration of this Agreement, the TA will provide to the United States: (a) copies of any proposed modifications or revisions to either the headwear portions of the TA's uniform policies for bus operators, train operators, station agents and SCAs, or the religious accommodation policy, no later than ninety (90) calendar days prior to the effective date of proposed modifications/revisions; and (b) copies of all requests for religious accommodation made concerning the headwear portions of the TA's uniform policies that resulted in denials by the TA, within thirty (30) calendar days of the issuance of denials of requests for religious accommodation.

## VI.    DISPUTE RESOLUTION

28.     The Court shall retain jurisdiction to hear and adjudicate noncompliance motions filed in accordance with paragraphs 29 - 33, below.

29.     The United States may review the TA's compliance with the numbered paragraphs of this Agreement at any time. The TA will provide a written response to a request by the United States to review compliance within twenty-one (21) calendar days of receipt of such a request. Within thirty (30) calendar days of receipt of a request from

12

the United States, the TA will provide copies of documents relevant to the TA's compliance with this Agreement.

30.     Prior to filing any noncompliance motion, the United States shall notify the TA in writing of any alleged noncompliance issues with this Agreement and request a meeting (which may be held by telephone, at the option of the United States) for the purpose of attempting to resolve the issues identified by the United States regarding the TA's alleged noncompliance.  The meeting shall be held no more than twenty-one (21) calendar days after the United States' notification to the TA.

31.     Should the Parties fail to resolve the noncompliance issues identified by the United States by engaging in the procedure outlined in paragraph 30, the Parties shall engage in mediation with a mutually acceptable mediator.  The mediation shall be scheduled within sixty (60) calendar days of the completion of the procedure outlined in paragraph 30.

32.     Should the Parties fail to resolve, through mediation, any noncompliance issues identified by the United States, the United States may file a motion with the Court seeking a judicial determination that the TA is not complying with this Agreement.  The TA shall have fifteen (15) calendar days to respond to any such motion.  If the Court finds that the TA has not complied with the Agreement, it may enter an order, but not an order of contempt, that is designed to achieve compliance.

33.     If the United States contends that the TA has not complied with an order entered under paragraph 32, it may, after fifteen (15) calendar days' notice to the TA, move for further relief from the Court to obtain compliance with the Court's prior order.

## VII.   MISCELLANEOUS

34.   This Agreement shall expire and this action shall be dismissed, without further order of this Court, after two (2) years from the date of entry of this Agreement. With respect to the time frames for completion of acts set forth in this Agreement, those time frames may be modified upon mutual written consent of the Parties.  The Parties may jointly agree to other modifications of this Agreement with the approval of the Court.  In the event of a dispute between the Parties with respect to compliance with the time frames set forth in this Agreement, the Parties shall utilize the dispute resolution procedures set forth in Section VI of this Agreement.

35.   The Parties shall bear their own costs, expenses and attorneys' fees in this action, including the costs of compliance or monitoring, except that the Parties shall retain the right to seek costs for any matter which, in the future may arise from this Agreement and require resolution by this Court.

## VIII.   SCOPE OF THE AGREEMENT

36.   This Agreement sets forth the entire agreement between the United States and the TA, and supersedes all other negotiations, representations or agreements, either written or oral, between the United States and the TA in this matter.

14

Agreed and Consented To:

On behalf of Plaintiff                           On behalf of Defendant
The United States of America:                    New York City Transit Authority:

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

BY:

_____                 _Richard Schoolman_  5/24/2012
Delora Kennebrew, Chief                          Richard Schoolman
                                                 Special Counsel
                                                 New York City Transit Authority
                                                 130 Livingston Street (12th Floor)     (RS)
                                                 Brooklyn, NY 11201  (Tel. (718) 694-4667)
_____                  Attorney for Defendant  (Fax (718) 694-5728)
Louis Lopez, Deputy Chief
(DC Bar No. 461662)
Alicia D. Johnson, Trial Attorney
(DC Bar No. 494032)
Shayna M. Bloom, Trial Attorney
(DC Bar No. 498105)
Woody Anglade, Trial Attorney
(NJ Bar No. 02270-2000)
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
PHB Room 4500
Washington, DC  20530
Telephone:  (202) 305-4349
Facsimile:  (202) 514-1005

*Attorneys for Plaintiff*

     APPROVED AND ORDERED this          day of                    , 2012.


_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE
Eastern District of New York

15

## ATTACHMENT A

### UNIFORM POLICIES

This draft modified uniform policy language is based on currently existing NYCTA uniform policies for Bus Operators, Trains personnel and Stations employees. The modified policies adopted under the Agreement will need to supersede all existing headwear policies including, but not limited to, those in permanent and temporary bulletins.

### Modified Uniform Headwear Language for Bus Operators (based on language from Bulletin Order No. 10B-137, but would also replace language in Bulletin 02.39.102)

Uniform headwear. If an operator elects to wear any form of headwear, TA-issued uniform hats, or other specified TA-issued or TA-approved headwear, shall be worn. The uniform hat (sometimes referred to as the depot or TA logo cap), if worn, shall be worn with the bill of the cap facing forward. Alternatively, an operator also may wear a turban made of fabric that is in the TA-approved plain, solid navy blue color; a khimar (or headscarf) made of fabric that is in the TA-approved plain, solid, navy blue color; a tam made of fabric that is in the TA-approved plain, solid navy blue color; a skullcap, kufi, or yarmulke made of fabric that is in the TA-approved plain, solid navy blue color. Employees who wear turbans, khimars (or headscarves), tams, skullcaps, yarmulkes or kufis need not wear any other head covering on top of or have a TA-issued logo or logo patch on that headwear but must display their TA-issued photo identification cards on the upper left-hand or upper right-hand portion of their outermost shirt or jacket or around the neck, in accordance with TA identification procedures applicable to all bus operators who wear turbans, khimars (or headscarves), tams, skullcaps, yarmulkes or kufis that do not have a TA-issued logo or logo patch affixed.

### Modified Uniform Headwear Language for Train Operators (based on language from Expansion of Headwear Options for Uniformed Personnel, Bulletin No. 77-09, but would also replace language in Bulletin No. 131-10)

If a train operator elects to wear any form of headwear, NYCT-issued uniform hats, or other specified NYCT-issued or NYCT-approved headwear, shall be worn. The uniform hat shall be worn with the bill of the hat facing forward. Alternatively, a uniformed employee may wear a turban or khimar (or headscarf) or tam made of fabric that is in the NYCT-approved plain, solid navy blue color. Employees also may wear a skullcap, yarmulke or kufi made of fabric that is in the NYCT-approved plain, solid navy blue color. Employees who wear turbans, khimars (or headscarves), tams, skullcaps, yarmulkes or kufis need not wear any other head covering on top of or have a TA-issued logo or logo patch on that headwear but must display their TA-issued photo identification cards on the upper left-hand or upper right-hand portion of their outermost shirt or jacket or around the neck, in accordance with TA identification procedures applicable to all train service personnel who wear turbans, khimars (or headscarves), tams, skullcaps, yarmulkes or kufis that do not have a TA-issued logo or logo patch affixed.

**Modified Uniform Headwear Language for Station Agents and SCAs (based on language from Bulletin No. 24-10, but would also replace language in Bulletin No. 14-06)**

Only NYCT-issued uniform hats or other specified NYCT-issued or NYCT-approved headwear shall be worn.  The uniformed hat shall be worn with the bill of the hat facing forward.  Alternatively, a uniformed employee may wear a turban made of fabric that is in the NYCT-approved plain, solid navy blue color.  A khimar (or headscarf) or tam made of fabric that is in the NYCT-approved plain, solid navy blue color also may be worn.  Employees also may wear a skullcap, yarmulke or kufi made of fabric that is in the NYCT-approved plain, solid navy blue color.  Employees who wear turbans, khimars (or headscarves), tams, skullcaps, yarmulkes or kufis need not wear any other head covering on top of or have a TA-issued logo or logo patch on that headwear but must display their TA-issued photo identification cards on the upper left-hand or upper right-hand portion of their outermost shirt or jacket or around the neck, in accordance with TA identification procedures applicable to all station agents and SCAs who wear turbans, khimars (or headscarves), tams, skullcaps, yarmulkes or kufis that do not have a TA-issued logo or logo patch affixed.

## ATTACHMENT B

## RELIGIOUS ACCOMMODATION POLICY AND PROCEDURE

The New York City Transit Authority (NYCTA) is fully committed to a diverse and inclusive work environment, and does not discriminate against employees or applicants on the basis of their religious beliefs, practices or observances in appointment, termination, or any other terms and conditions of employment.

Employees and applicants whose religious belief, practice or observance conflicts with NYCTA rules, policies, or procedures may request a religious accommodation.

The NYCTA will provide reasonable accommodation for the religious beliefs, practices or observances of all employees and applicants absent an undue hardship on the NYCTA.

**1.      What should a person do if s/he wants to request a religious accommodation?**

An employee or applicant wishing to request a religious accommodation (other than one involving Sabbath Observance [see Q&A 3 below] must first submit a written request to his or her immediate Supervisor, Manager, Director, or the agency personnel supervising the application process.  The request can be in the form of a "G2 memo" or a letter from the employee or applicant, and should include the following information:

- date of the request for religious accommodation;
- contact information (including telephone number) for the employee or applicant;
- a clear statement of the conflict between the NYCTA rule, policy or procedure and the religious belief, practice or observance of the employee or applicant; and
- the requested accommodation and the start date for the accommodation.

Although not required, the employee or applicant also may attach to the G2 memo (or letter) additional documentation explaining or supporting the requested religious accommodation.

**2.      When should a person make a request for religious accommodation?**

An employee or applicant should make his or her request for religious accommodation as far in advance as possible before the requested accommodation is needed, ideally no later than ten (10) days prior to the date that the requested accommodation would take place, so that it can be appropriately considered.  Failure to provide advance notice of a request for accommodation will not automatically result in denial of the accommodation.

**3.      What should a person do if his/her request for religious accommodations is related to a Sabbath Observance?**

If an employee or applicant is requesting a religious accommodation of a Sabbath Observance, s/he should use the NYCTA's existing policy and procedure regarding Sabbath

18

Observance, which remains in effect and is not changed by this religious accommodation policy and procedure.

**4.    What is the procedure for handling a person's request for religious accommodation?**

Supervisors, Managers, Directors and other agency personnel receiving requests for religious accommodation will immediately forward those requests to the Senior Director of Collective Bargaining, Office of Labor Relations, New York City Transit Authority, 2 Broadway, Room A13.142, New York, NY 10004.

Prior to making a decision regarding the request for religious accommodation, the Senior Director of Collective Bargaining *may* have an interactive discussion about the accommodation with the requesting employee or applicant and his/her Supervisor, Manager, Director, or the agency personnel supervising the application process. However, before any decision is made denying an accommodation, the Senior Director of Collective Bargaining *must* make a good faith effort to have an interactive discussion about the accommodation with the requesting employee or applicant and his/her Supervisor, Manager, Director, or the agency personnel supervising the application process. All discussions should focus on all relevant issues, including whether and how the NYCTA can accommodate the employee's or applicant's religious belief, practice or observance absent undue hardship.

The Senior Director of Collective Bargaining will carefully and expeditiously review all requests for religious accommodation and return a copy of the original request (and any supporting documentation provided) with a written decision to the requesting employee's department (or, for applicants, the prospective department). If the requested accommodation constitutes an undue hardship, the parties shall investigate potential alternative accommodations that would not create an undue hardship. If the accommodation is denied, the Senior Director of Collective Bargaining will include the reason(s) for denial in his or her decision, including a description of the resulting undue hardship. Generally, the department shall promptly forward the decision and related materials to the employee or applicant as far in advance of the date that the accommodation would begin, and where possible, no later than three (3) days before that date.

**5.    May a person appeal the denial of a request for religious accommodation by the Senior Director of Collective Bargaining?**

Yes. A person dissatisfied with the decision of the Senior Director of Collective Bargaining may obtain review of that decision by filing an appeal with the Chief Officer of the NYCTA's Office of Equal Employment Opportunity. To do so, a requesting employee or applicant must submit a G2 memo or letter (along with a copy of the Senior Director's written decision and the supporting documentation that the employee or applicant originally provided) within two (2) weeks of receiving the Senior Director's decision to: Chief Officer, Office of Equal Employment Opportunity, New York City Transit Authority, 130 Livingston Street, Room 3009, Brooklyn, NY 11201.

The Chief Officer of the Office of Equal Employment Opportunity will issue a written decision to the requesting employee or applicant and the respective department, where possible, no later than five (5) days after the appeal has been submitted. In the event that the accommodation would occur while the appeal was pending, where possible, the decision will be provided before the date that the accommodation would start. If an appeal is denied, the decision must provide the reason(s) for denial.

Although an appeal of a decision denying a request for a religious accommodation is filed with the NYCTA's Office of Equal Employment Opportunity, the appeals process is separate and different from the complaint process utilized for filing claims of employment discrimination. Employees and applicants have the right to file a complaint before or at any time during the religious accommodation process with the NYCTA's Office of Equal Employment Opportunity or outside agencies, such as the U.S. Equal Employment Opportunity Commission or the New York State Division of Human Rights. Please note that there are deadlines for filing complaints with the above outside agencies. The denial of an appeal of a decision on a request for religious accommodation will not automatically result in a negative finding on a complaint of employment discrimination filed with the Office of Equal Employment Opportunity.

**ATTACHMENT C**

**NEW YORK CITY TRANSIT AUTHORITY
RELIGIOUS ACCOMMODATION GUIDANCE**

**1.      What is Religious Discrimination?**

Title VII of the Civil Rights Act of 1964 (Title VII) prohibits certain employers from discriminating in employment based on religion.  Specifically, Title VII prohibits:

- treating employees/applicants differently based on their religious beliefs, practices or observances in any aspect of employment;
- subjecting employees/applicants to harassment because of their religious beliefs, practices or observances;
- denying an employee's/applicant's requested accommodation of a religious belief, practice or observance where the belief, practice or observance conflicts with his/her employer's rules, policies, or procedures if the accommodation will not create an undue hardship; and
- retaliating against an employee/applicant who has participated in the EEO process or opposed an employment decision that he/she reasonably believed to constitute religious discrimination.

**2.      What is the NYCTA's Policy regarding Religious Accommodation?**

The NYCTA is fully committed to a diverse and inclusive work environment, and does not discriminate against employees/applicants because of their religious beliefs, practices or observances in appointment, termination, or any other terms and conditions of employment.

Employees/applicants whose religious belief, practice or observance conflicts with NYCTA rules, policies, or procedures may request a religious accommodation.  The NYCTA will offer a reasonable accommodation for the religious belief, practice or observance of all employees and/or applicants absent an undue hardship on the NYCTA.

**3.      What is the NYCTA's Procedure for Processing Requests for Religious Accommodation?**

**Step 1**:  An employee or applicant wishing to request a religious accommodation (other than one involving Sabbath Observance) must first submit a written request to his or her immediate Supervisor, Manager, Director, or the agency personnel supervising the application process.  The request can be in the form of a "G2 memo" or a letter from the employee or applicant, and should include the following information:

- date of the request for religious accommodation;
- contact information (including telephone number) for the employee or applicant;

- a clear statement of the conflict between the NYCTA rule, policy or procedure and the religious belief, practice or observance of the employee or applicant; and
- the requested accommodation and the start date for the accommodation.

Although not required, the employee or applicant also may attach to the G2 memo (or letter) additional documentation explaining or supporting the requested religious accommodation.

> ***Timing***:  An employee or applicant should make his or her request for religious accommodation as far in advance as possible before the requested accommodation is needed, ideally no later than ten (10) days prior to the date that the requested accommodation would take place, so that it can be appropriately considered. Failure to provide advance notice of a request for accommodation will not automatically result in denial of the accommodation.

> ***Sabbath Observances***:  If an employee or applicant is requesting a religious accommodation of a Sabbath Observance, s/he should use the NYCTA's existing policy and procedure regarding Sabbath Observance, which remains in effect and is not changed by this religious accommodation policy and procedure.

**Step 2**:  Supervisors, Managers, Directors and other agency personnel receiving requests for religious accommodation will immediately forward those requests to the Senior Director of Collective Bargaining, Office of Labor Relations, New York City Transit Authority, 2 Broadway, Room A13.142, New York, NY 10004.

> ***Requests should be Forwarded Immediately***:  Many requested accommodations have specific start dates and, where possible, the review, initial decision-making and potential appeals process for accommodations must be completed within specified timeframes.  As such, it is imperative that Supervisors, Managers, Directors and other agency personnel receiving requests for religious accommodation act without delay in forwarding requests to the Senior Director of Collective Bargaining.

**Step 3**:  Prior to making a decision regarding the request for religious accommodation, the Senior Director of Collective Bargaining *may* have an interactive discussion about the accommodation with the requesting employee or applicant and his/her Supervisor, Manager, Director, or the agency personnel supervising the application process.

> ***Benefits of Interactive Discussion***:  An exchange of relevant information between the NYCTA and the employee or applicant requesting a religious accommodation may assist the NYCTA in determining what accommodation, if any, the NYCTA can provide to the employee or applicant without causing an undue hardship on the NYCTA.

However, before any decision is made denying an accommodation, the Senior Director of Collective Bargaining *must* make a good faith effort to have an interactive discussion

about the accommodation with the requesting employee or applicant and his/her Supervisor, Manager, Director, or the agency personnel supervising the application process. All discussions should focus on all relevant issues, including whether and how the NYCTA can accommodate the employee's or applicant's religious belief, practice or observance absent undue hardship.

> ***Collaborative Effort to Exchange Relevant Information***: The purpose of the interactive discussion will be for the NYCTA and the employee or applicant to share information regarding: (i) the stated religious belief, practice or observance of the employee or applicant; (ii) the NYCTA's department-wide operational needs and local policies and practices (*e.g.*, uniform requirements, day-to-day shift and/or staff requirements, job duties, etc.); and (iii) the available religious accommodation options. The Supervisors, Managers, Directors and other agency personnel receiving requests for religious accommodation will play a vital role in these interactive discussions. Their firsthand knowledge of the daily functioning, requirements and challenges of the respective departments (that may not be known to the employee or applicant or the Senior Director of Collective Bargaining) will allow Supervisors, Managers, Directors and other agency personnel receiving requests for religious accommodation to provide valuable input regarding the availability of accommodation options.

The Senior Director of Collective Bargaining will carefully and expeditiously review all requests for religious accommodation and return a copy of the original request (and any supporting documentation provided) with a written decision to the requesting employee's department (or, for applicants, the prospective department). If the accommodation is denied, the Senior Director of Collective Bargaining will include the reason(s) for denial in his or her decision, including a description of the resulting undue hardship. Generally, the department shall promptly forward the decision and related materials to the employee or applicant as far in advance of the date that the accommodation would begin, and where possible, no later than three (3) days before that date.

**Step 4**: Employees or applicants may obtain review of the decision of the Senior Director of Collective Bargaining by filing an appeal with the Chief Officer of the NYCTA's Office of Equal Employment Opportunity. To do so, a requesting employee or applicant must submit a G2 memo or letter (along with a copy of the Senior Director's written decision and the supporting documentation that the employee or applicant originally provided) within two (2) weeks of receiving the Senior Director's decision to: Chief Officer, Office of Equal Employment Opportunity, New York City Transit Authority, 130 Livingston Street, Room 3009, Brooklyn, NY 11201. The Chief Officer of the Office of Equal Employment Opportunity will issue a written decision to the requesting employee or applicant and the respective department, where possible, no later than five (5) days after the appeal has been submitted. In the event that the accommodation would occur while the appeal was pending, where possible, the decision will be provided before the date that the accommodation would start. If an appeal is denied, the decision must provide the reason(s) for denial.