IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 04-CV-4237 (SLT) (MDG)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF UNITED STATES' UNOPPOSED MOTION FOR ENTRY OF SETTLEMENT AGREEMENT

**I. INTRODUCTION**

Plaintiff United States of America ("United States") submits this memorandum in support of its Unopposed Motion for Entry of Settlement Agreement ("Motion"). The United States requests that the Court enter the proposed Settlement Agreement ("Agreement"), attached as Ex. 1 to the United States' Unopposed Motion to Approve and Enter Settlement Agreement. Defendant New York City Transit Authority ("TA") does not oppose the Motion for entry of the Agreement but does not join in this Memorandum.

As set forth below, the Court should enter the Agreement because its terms are lawful, fair, reasonable, adequate and consistent with the public interest. The terms of the Agreement fulfill the goals of: (1) ensuring that the TA's employment practices do not violate Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.* by discriminating against employees whose sincerely held religious beliefs require them to wear religious headwear; (2) ensuring that the TA provides religious accommodations, absent undue hardship, to employees pursuant to Title VII; and (3) providing appropriate relief to individuals who have been harmed by the employment practices challenged by the United States in this case.

## II. RELEVANT BACKGROUND

On September 30, 2004, pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States commenced this pattern or practice action against the TA. The United States' Complaint alleges that: (1) the TA selectively enforces its uniform headwear policies against employees who are unable to comply for religious reasons; and (2) the TA fails or refuses to reasonably accommodate those employees. Specifically, the United States alleges that prior to September 11, 2001, the TA had not enforced its uniform headwear policies, but that beginning in or about March 2002, the TA selectively enforced those policies against Muslim, Sikh and similarly-situated employees, moving them or threatening to move them out of public contact positions because they, consistent with their sincerely held religious beliefs, refused to attach TA logos to their khimars and turbans, respectively. The United States also alleges that the TA could have provided reasonable accommodations to affected employees without undue hardship. The United States seeks make-whole relief, including but not limited to back pay with interest and other employment benefits, for affected individuals who have suffered losses as a result of the discriminatory policies and practices of the TA. *See* Complaint.

The United States and the TA (collectively, the "Parties") engaged in extensive discovery. Indeed, the United States took the depositions of approximately three dozen individuals, most of whom were TA employees. On May 27, 2008, the TA moved for summary judgment against the United States. On September 28, 2010, this Court denied the TA's motion in its entirety. The TA filed a motion for reconsideration, which was denied by the Court on September 30, 2011.

As a result of extensive settlement discussions that began in November 2010, the United States and the TA have negotiated and executed the Agreement, which is the subject of this

Memorandum. *See* Agreement. The TA denies that it has violated Title VII and makes no admission of liability by executing the Agreement.

## III. SUMMARY OF THE SETTLEMENT AGREEMENT

### A. Prospective Injunctive Relief

Under the Agreement, the TA will adopt a new religious accommodation policy and procedure as well as new uniform headwear policies for bus operators, train operators and station agents. Agreement at ¶¶ 3-7. The TA also will provide training to managers and hiring personnel regarding the new religious accommodation policy and procedure. *Id.* at ¶¶ 8-10.

### B. Individual Relief

Pursuant to the Agreement, the TA will provide specific relief to certain identified individuals who, because of the employment practices at issue, were not permitted to wear religious headwear without the TA logo or who were removed from their public contact positions due to their refusal based on sincerely held religious beliefs to comply with TA uniform headwear policies. *Id.* at ¶¶ 11-24. Such relief includes, for some, a return to positions from which the TA removed them after they refused to comply with uniform headwear policies and expungement of references to uniform headwear violations from personnel records. Eight individuals also have reached private agreements with the TA regarding monetary relief in their related individual cases – which included claims under Title VII – and such relief is expressly referenced in the Agreement. *Id.* at ¶¶ 11-23.

### C. Continuing Jurisdiction and Duration of the Agreement

Per the Agreement, the Court will retain jurisdiction over this case for the duration of the Agreement. *Id.* at ¶ 28. The Agreement will expire, and the case will be dismissed without further order of the Court, two years from the date the Agreement is entered by the Court. *Id.* at ¶ 34.

3

IV.   **ARGUMENT**

    A.   **Standard of Review**

"In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). Congress placed an "extremely high premium . . . on voluntary settlements of Title VII suits." *United States v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980), *modified per curiam*, 664 F.2d 435 (5th Cir. 1981). *See also Local 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 515 (1986) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)); *Kirkland v. New York State Dep't of Corr. Servs.*, 711 F.2d 1117, 1128 (2d Cir. 1983); *Berkman v. City of New York*, 705 F.2d 584, 597 (2d Cir. 1983).

The proper standard for approval of a settlement agreement or consent decree resolving a suit brought under Title VII, such as this one, is whether the proposed agreement is lawful, fair, reasonable, adequate, and consistent with the public interest.[1] *See United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (reversing district court that refused to enter consent decree); *Vulcan Soc'y v. City of New York*, 96 F.R.D. 626, 629 (S.D.N.Y. 1983) (court must find that proposed settlement is "lawful, reasonable and equitable[,]" and that class members' interests are duly served). *See also Kirkland*, 711 F.2d at 1124 (noting that district court approved settlement on grounds that it was fair, reasonable and lawful in all respects); *Comm'n Workers of Am. v. New Jersey Dep't of Personnel*, 282 F.3d 213, 219 (3d Cir. 2002) ("settlement agreements . . . are agreed to be subject to a universal standard, that of fairness, adequacy and

---

[1] Court-approved settlement agreements (including class action settlements) and consent decrees are often analyzed in the same manner. *See Hutchinson ex. rel. Julien v. Patrick*, 636 F.3d 1, 9-11 (1st Cir. 2011). *See also E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 888 (7th Cir. 1985) ("The same standards generally apply to district . . . court review of Title VII settlements as apply to any class action settlement.").

4

reasonableness"). In determining the fairness of a proposed agreement, courts should "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Carson*, 450 U.S. at 88.

"The remedies provided by a Title VII settlement . . . must be substantially related to the objective of eliminating the alleged instance of discrimination . . . and must not unnecessarily trammel the interests of affected third parties."[2] *Kirkland*, 711 F.2d at 1132. In a Title VII action, an agreement that has been negotiated by the parties to that suit is presumptively valid. *Id.* at 1128; *see also Vulcan Soc'y*, 96 F.R.D. at 629 (strong presumption of legitimacy). Significantly, the presumption of validity can be "'overcome only if the [settlement] contains provisions which are unreasonable, illegal, unconstitutional, or against public policy.'" *Kirkland*, 711 F.2d at 1129 (citations omitted); *see also Berkman*, 705 F.2d at 597 ("In general, therefore, when the parties to the litigation have agreed on a means of achieving compliance, the district court should normally approve the settlement unless it contains provisions that are unreasonable, unlawful, or against public policy.").

Moreover, a negotiated settlement agreement in an employment discrimination suit in which the plaintiff is an agency of the federal government "carries with it a presumption of validity that is overcome only if the [settlement] contains provisions which are unreasonable, illegal, unconstitutional, or against public policy." *United States v. City of Alexandria*, 614 F.2d

---

[2] A fairness hearing is not required in Title VII cases. *See Comm'n Workers of Am.*, 282 F.3d at 215-19 (court found no authority mandating fairness hearing in Title VII pattern or practice race discrimination settlement seeking declaratory and injunctive relief). A fairness hearing is not required in this case, where the proposed settlement does not involve issues of retroactive seniority, priority hiring, priority promotions, etc., and therefore would not adversely impact the interests of third parties. *See E.E.O.C., et al. v. New York State Dep't of Corr. Servs.*, Civ. Act. No. 07-2587, Dkt. No. 12 (S.D.N.Y. May 21, 2008) (Judge Shira A. Scheindlin) (no fairness hearing required in Title VII pattern or practice sex discrimination settlement, which did not involve issues of retroactive seniority, priority hiring, priority promotions, etc.).

1358, 1362 (5th Cir. 1980); *E.E.O.C. v. Johnson & Higgins, Inc.*, No. 93 CIV 5481 LBS, 1999 WL 544721, at *3 (S.D.N.Y. Jul. 26, 1999) (well-settled that courts have limited role in reviewing proposed settlement agreements in litigation initiated by EEOC, which has responsibilities analogous to Department of Justice) (internal citation omitted).

  **B.** **The Standard for Approval of a Settlement Agreement Has Been Met in this Case and the Settlement Agreement Should Be Approved**

    1. <u>The United States Is Likely To Prevail At Trial</u>

All of the factors a court should weigh support approval of the Agreement. As noted above, when deciding whether to enter a settlement agreement, a court must consider the strength of the plaintiff's case balanced against the settlement offer. *See, e.g., Carson*, 450 U.S. at 88 n.14 (1981) (internal citation omitted). This balancing test is necessary before a court can conclude that a settlement agreement is fair, reasonable and adequate.

The Agreement proposed by the Parties is lawful, fair, reasonable, adequate and consistent with the public interest because the United States has a strong likelihood of prevailing on the merits. The United States filed suit pursuant to Section 707 of Title VII, 42 U.S.C. § 2000e-6, which authorizes the Attorney General to bring an action against a state or local government employer that has engaged in a pattern or practice of Title VII-proscribed discrimination. At issue here are the TA's uniform headwear policies for bus operators, station agents and train operators. In its Complaint, the United States alleges that the TA's decision to prohibit employees working in public contact positions from wearing religious headwear without TA logos violates Title VII. Based on information gathered during discovery, the United States can demonstrate that the challenged employment practices at issue resulted in the systemic disparate treatment of TA employees working in public contact positions whose sincerely held religious beliefs require them to wear religious headwear without TA logos. The United States

6

also can establish that the TA failed or refused to reasonably accommodate these employees and that the TA would not have experienced undue hardship if it had provided requested accommodations.

In the TA's Motion for Summary Judgment, it asserted that the United States could not use Section 707 of Title VII (which describes "pattern or practice" actions) to advance its systemic disparate treatment and failure to accommodate claims that the TA discriminated based on religion. The Court found that the United States' use of Section 707 was appropriate because pattern or practice claims are not solely limited to disparate treatment claims. (Internal quotation marks omitted). Mem. Op. Denying TA Mot. for Summ. J. entered Sept. 28, 2010 (Dkt. No. 221) at 24. The Court also stated that Second Circuit caselaw did not require the United States to identify a large number of victims of discrimination to survive the TA's Motion. *Id.* at 26-27.

The Court rejected the TA's arguments that because the United States could not prove that affected Muslim and Sikh employees were disciplined and because the TA had offered the employees what it believed was a reasonable accommodation, the United States' systemic disparate treatment claim must fail. *Id.* at 28-30. The Court noted that the two-phase framework in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ("*Teamsters*"), and not the burden-shifting analysis found in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies in government-initiated pattern or practice cases. *Id.* The Court also found that a genuine issue of material fact remained as to whether the TA had actually offered reasonable accommodations to the affected employees. *Id.* at 30-34.

The Court also rejected the TA's "undue hardship" argument. *Id.* at 34. The Court distinguished the United States' case from others in which courts found uniform policies lawful even though such policies infringed upon employees' religious beliefs. *Id.* at 34-39. The Court

7

noted evidence that the TA employees were not seeking an exemption from the TA uniform headwear policies, but a compromise. *Id.* at 37. The Court disposed of the TA's argument that allowing employees to wear turbans and khimars without TA logos would compromise safety. *Id.* The Court further opined that the nature of the TA's business as an operator of public transit systems means it cannot rely on the same "highly competitive business environment" arguments that private businesses advance in seeking to uphold uniform requirements. *Id.* at 38-39.

Finally, the Court rejected the TA's argument that the United States' systemic disparate treatment claim based on selective policy enforcement should be dismissed. The Court reiterated that the United States had no obligation to make out a *prima facie* case under *McDonnell Douglas*, and thus did not need to show that affected employees suffered adverse employment actions or rebut the TA's articulated, legitimate, non-discriminatory reasons for its actions. *Id.* at 39-41.

The Court's opinion denying the TA's Motion for Summary Judgment demonstrates the strength of the United States' legal positions in this case. In its extensive brief in opposition to the TA's Motion for Summary Judgment, the United States provided substantial documentary and testimonial evidence supporting the claims alleged in is Complaint, and will be able to present the same types of evidence at trial.

2. <u>The Relief Sought is Appropriate</u>

The relief provided in the Agreement is lawful, fair, reasonable, adequate and consistent with the public interest because: (i) it ensures through prospective injunctive relief that the TA will use lawful employment practices that do not discriminate against employees whose sincerely held religious beliefs require them to wear religious headwear; and (ii) it requires the TA to provide individual relief to current and former employees who actually have been harmed by the

challenged employment practices. The Agreement affords no more relief than is appropriate under Title VII and that the United States could have obtained were it to prevail at trial.

     *a.*  *The Prospective Injunctive Relief Should Be Awarded*

When an employer has engaged in a pattern or practice of discrimination in violation of Title VII, an award of prospective injunctive relief is justified without any further showing. *See Teamsters*, 431 U.S. at 361. Courts have routinely entered agreements that, like the Agreement here, afford such relief. Appropriate prospective injunctive relief may include a bar against future discrimination, an order to maintain records and generate compliance reports, or any other directive that is "necessary to ensure the full enjoyment of the rights" protected by Title VII. *See id.*; *see also Spina v. Forest Preserve Dist. of Cook Cnty.*, Civ. Act. No. 98-C-1393, 2002 WL 1769994, at *2-5 (N.D. Ill. July 31, 2002) (ordering equitable relief in form of permanent injunction, development of sexual harassment and retaliation policy, mandated comprehensive training, and implementation of complaint and investigation procedure where evidence presented at trial established a pattern and practice of sex discrimination); *Wells v. Lobb & Co., Inc.*, Civ. Act. Nos. 97-WM-1011, 97-WM-1317, 98-WM-279, 1999 WL 1268331, at *1-5 (D. Colo. Dec. 1, 1999) (ordering extensive and complex injunctive relief in form of permanent injunction, recordkeeping and reporting requirements, posting of notice, development of sexual harassment policy, mandatory training and issuance of apology in Title VII pattern or practice sexual harassment case).

Consistent with these parameters, the Agreement in this case requires the TA to adopt new uniform headwear policies, which would allow employees working in public contact positions to wear khimars, yarmulkes, turbans, kufis, skullcaps, tams and headscarves without attaching anything to the headwear, as long as the headwear is in the TA-approved solid, navy blue color. *See* Agreement at ¶ 3, Attachment A. Employees need not request religious

9

accommodation before being allowed to avail themselves of one of these options, and there is no requirement that an employee provide any documentation from a religious leader in order to utilize one of these options. *Id.*; *see, e.g.*, *E.E.O.C. v. Local 638, et al.*, 401 F.Supp. 467, 489-92 (S.D.N.Y. 1975) (court determined after trial that defendants had violated Title VII by denying employment opportunities to minorities, and ordered parties, among other things, to design new recruitment, testing and admission programs), *modified and, as modified, affirmed,* 532 F.2d 821 (2d Cir. 1976).

The Agreement also requires the TA to adopt a new policy and procedure regarding religious accommodation. The new policy and procedure provides employees with information about whom to contact for religious accommodation and what documentation the employee should provide to that individual. *See* Agreement, Attachment B. It includes timeframes for requesting accommodation and a requirement that TA managers attempt to engage in an interactive process with an employee before deciding the employee's request for accommodation. *Id.* This new process will encourage a dialogue between the TA and employees which should, in turn, allow better determinations to be made regarding requests for religious accommodations. The new policy and procedure also provides an appeal process for employees whose requests are denied. *Id.* Denials will be provided in writing, both at the first and second levels of review. *Id.* This requirement will facilitate better understanding between employees and the TA as to why a particular request is denied. Upon request, the United States may review documentation related to requests for religious accommodation. *Id. See, e.g., E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1577-79 (7th Cir. 1997) (after bench verdict for EEOC in case of failure to provide religious accommodation, appellate court affirmed district

court's award of injunctive relief that required employer to report receipt of requests for religious accommodation and its efforts to accommodate those requests).

The Agreement also requires the TA to train individuals who will be responsible for implementing the new religious accommodation policy and procedure. *See* Agreement at ¶¶ 8-10. Managers who will review religious accommodation requests will receive guidance on the new policy and procedure so that they understand the importance of their role in that process. *Id.* at ¶ 9, Attachment C. Higher-level managers who are designated to review the appeals of denials of such requests will receive training from the Equal Employment Opportunity Commission regarding the new policy and procedure and Title VII's prohibition of religious discrimination. *Id.* at ¶ 8. The training provisions will increase the likelihood that managers comply with Title VII in reviewing and making determinations about religious accommodation requests. *See, e.g., E.E.O.C. v. Boh Bros. Const. Co., LLC*, Civ. Act. No. 09-6460, 2011 WL 3648483, at *1-4 (E.D. La. Aug. 18, 2011) (after jury verdict in favor of EEOC in sexual harassment case, court awarded injunctive relief which required company to train all employees on sexual harassment and to adopt sexual harassment policy); *E.E.O.C. v. DCP Midstream, L.P.*, 608 F.Supp.2d 115, 116-118 (D. Me. 2009) (requiring employer to distribute anti-retaliation policy, to provide training to employees and to expunge termination records from private plaintiff's personnel record after EEOC prevailed during jury trial in Title VII race discrimination and retaliation case). Thus, the prospective injunctive relief provisions of the Agreement are lawful, fair, reasonable, adequate and consistent with the public interest.

     b.  *The Individual Relief Should Be Awarded*

One of the central purposes of Title VII is to make whole persons who have been harmed by employment practices that violate the statute. In enacting Title VII, "Congress took care to arm the courts with full equitable powers" so that the courts may fashion relief for identifiable

11

individuals harmed by unlawful employment practices. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). To exercise those equitable powers, a court may "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . . or any other equitable relief as the court deems appropriate." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (quoting Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g)). In Title VII cases like this, "[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Albemarle*, 422 U.S. at 418-19 (internal citation omitted).

Under the Agreement, the individual remedial relief provided is appropriate in light of courts' broad power to grant relief to individuals harmed by employment practices that violate Title VII. Importantly, individual remedial relief under the Agreement is only available to those victims who were adversely affected by the employment practices challenged by the United States – namely, employees working in public contact positions whose sincerely held religious beliefs require them to wear religious headwear without TA logos. Although all of the individuals named in the Agreement are represented by private counsel and have filed their own related lawsuits against the TA, the United States sought relief on their behalf through this action and will obtain such relief on their behalf through this settlement. *See Local 638, et al.*, 532 F.2d at 832 (awarding back pay to individuals who can prove by testimonial evidence that they were unlawfully excluded from defendant union and apprenticeship program).

The TA has agreed to pay eight individual victims – Trilok Arora, Jatinder Attari, Brijinder Gill, Satinder Arora, Inderjit Singh, Malikah Alkebulan, Deirdre Small and Kevin Harrington, all of whom are or were Station Agents, Bus Operators or Train Operators – monetary relief to resolve related claims they raised in their separate lawsuits against the TA,

which included claims under Title VII.[3] The monetary settlements are memorialized in separate, private settlement agreements. Those private agreements incorporate the United States' Agreement by reference and the eight individuals accept the prospective injunctive relief obtained by the United States as part of their settlements with the TA.

Malikah Alkebulan and Deirdre Small, two current Bus Operators, are still working in the non-public contact positions to which they were moved after they refused for religious reasons to abide by the TA's uniform headwear policies. The Agreement requires that Alkebulan and Small be permitted to bid for public contact positions during the TA's next available bidding process. The Agreement also requires the TA to expunge references to uniform headwear violations from the personnel records of certain identified current and former employees.

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter the accompanying proposed Order, which approves and enters the proposed Settlement Agreement.

Date: May 30, 2012

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
DELORA KENNEBREW
Chief, Employment Litigation Section

By: /s/ Louis Lopez

LOUIS LOPEZ
Deputy Chief
WOODY ANGLADE
SHAYNA BLOOM
ALICIA JOHNSON
Trial Attorneys
United States Department of Justice
Civil Rights Division

---

[3] The remaining identified victims, two former Bus Operators, one of whom is now deceased, are represented by private counsel in separate lawsuits against the TA, and have not yet entered into private settlement agreements for individual monetary relief.

Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Room 4500
Washington, D.C. 20530
(202) 305-1250

Counsel for Plaintiff United States

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                            Civil Action No. 04 CV 4237 (SLT) (MDG)

NEW YORK CITY TRANSIT AUTHORITY,

    Defendant.

---

### ORDER

Upon consideration of the United States of America's Motion for approval and entry of the Settlement Agreement, that was filed without opposition from Defendant New York City Transit Authority, and its accompanying memorandum in support thereof, it is hereby **ORDERED** that the Motion is **GRANTED**.

Dated:_____, 2012.

                                                              THE HONORABLE MARILYN D. GO
                                                              UNITED STATES MAGISTRATE JUDGE